UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
RAMON APONTE,

                    Petitioner,                    **MEMORANDUM AND ORDER**
                                                    16 Civ. 3511(NRB)
              - against –                           02 Cr. 1082-4 (NRB)

UNITED STATES OF AMERICA,

                    Respondent.

------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Before the Court is Ramon Aponte's ("Aponte" or "petitioner")
petition under 28 U.S.C. § 2255 to vacate two 2003 convictions for
violating 18 U.S.C. § 924(c) in light of the Supreme Court's
decision in United States v. Taylor, 142 S. Ct. 2015 (2022) (the
"Petition").  See ECF No. 26.[1]  For the following reasons, the
Petition is denied.

## BACKGROUND

     Aponte was originally indicted on August 13, 2002, along with
five other defendants.  No. 02-cr-1082-04, ECF No. 8.  Thereafter,
Aponte, his original five co-conspirators, and additional
defendants were charged in multi-count superseding indictments
with various violent crimes and drug trafficking-related crimes
based on their activity on behalf of the Manzueta Organization, a

---

[1] Unless otherwise specified, all docket citations are to Dkt. 16-cv-3511.

violent enterprise that focused on robbing drug dealers in New York City of narcotics and narcotics proceeds.  <u>See, e.g.</u>, No. 02-cr-1082-04, ECF No. 48; Presentence Investigation Report ("PSR") ¶¶ 23, 25, 54-59, 64-65, 67-72.[2]  Aponte was a leader of the Organization.  <u>See</u> PSR ¶ 36.

On September 26, 2003, Aponte pled guilty to a three-count superseding information.  No. 02-cr-1082-04, ECF No. 67 (the "S12 Information").  Counts One and Two are structured identically and contain the § 924(c) violations at issue in the Petition. Specifically, Count One charged Aponte with violating 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, and reads:

> On or about January 29, 2001, in the Southern District of New York, RAMON APONTE, a/k/a/ "Mañoma," a/k/a "Milton D. Hernandez," a/k/a "Antonio Stickles Rodriguez," the defendant, unlawfully, willfully and knowingly used and carried a firearm, and aided and abetted the use and carrying of a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, and possessed a firearm in furtherance of such a crime, <u>to wit</u>, a conspiracy to rob, and attempted robbery of, drugs and drug proceeds from a person APONTE believed to be a drug dealer, in violation of Title 18, United States Code, Section 1951, <u>to wit</u>, APONTE used, carried and possessed and aided and abetted the use, carrying and possession of a firearm during a robbery in furtherance of which APONTE, together with others known and unknown, forcibly entered an apartment in the vicinity of 840 Grand Concourse, Building No. 10, Bronx, New York, brandished a firearm, searched for narcotics proceeds, restrained the occupants, assaulted, burned and beat at least one

---

[2] Defense counsel had no objections to the PSR at sentencing.  <u>See</u> ECF No. 130, Transcript of Sentencing Hearing ("Sentencing Tr.") at 1.

of the occupants and robbed the occupants of personal
items.

Id. at 1-2 (emphasis added).  Likewise, Count Two charged Aponte
with violating 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i), and
2, and reads:

> In or about the Spring of 2001, in the Southern District
> of New York, RAMON APONTE, a/k/a/ "Mañoma," a/k/a
> "Milton D. Hernandez," a/k/a "Antonio Stickles
> Rodriguez," the defendant, unlawfully, willfully and
> knowingly used and carried a firearm, and aided and
> abetted the use and carrying of a firearm, during and in
> relation to a crime of violence for which he may be
> prosecuted in a court of the United States, and possessed
> a firearm in furtherance of such a crime, to wit, a
> conspiracy to rob, and attempted robbery of, drugs and
> drug proceeds from a person APONTE believed to be a drug
> dealer, in violation of Title 18, United States Code,
> Section 1951, to wit, APONTE, together with others known
> and unknown, robbed the occupants of an apartment in the
> vicinity of 155th Street and Saint Nicholas Place, New
> York, New York, of cocaine, restraining the victims and
> assaulting one with a gun.

Id. at 2 (emphasis added).  Count Three charged Aponte with using
a cellular telephone in furtherance of a conspiracy to distribute
and possess drugs obtained in robberies of drug dealers, in
violation of 21 U.S.C. § 843(b).  Id. at 3.

On January 16, 2004, this Court sentenced Aponte to the
mandatory minimum sentence of incarceration of seven years on Count
One, the mandatory minimum sentence of incarceration of twenty-
five years on Count Two, and the maximum sentence of incarceration
of four years on Count Three.  No. 02-cr-1082-04, ECF No. 110.

The sentences were imposed to run consecutively, for a total term of imprisonment of 432 months.  Id.

On May 10, 2016, Aponte filed a petition pursuant to 28 U.S.C. § 2255, arguing that neither of the robberies underlying his two § 924(c)(1)(A) convictions qualified as "crimes of violence" as defined in 18 U.S.C. § 924(c)(3).  ECF Nos. 1–2.[3]  On August 6, 2021,[4] we denied the Petition because Aponte's § 924(c) charges were predicated, in part, on attempted Hobbs Act robbery, an offense which the Second Circuit had only recently held was a valid crime of violence predicate under § 924(c).  See ECF No. 20, August 6, 2021 Memorandum and Order (the "2021 Memorandum and Order"), at 4–6; United States v. McCoy, 995 F.3d 32, 55 (2d Cir. 2021); 18 U.S.C. § 1951.[5]

Aponte's appeal from this Court's decision was stayed by the Second Circuit on December 1, 2021 pending the Supreme Court's disposition of United States v. Taylor, No. 20-1459.  See ECF No.

---

[3] Aponte originally filed his petition pro se, but since June 15, 2016, Aponte has been represented by Federal Defenders of New York.

[4] Aponte's petition remained dormant pursuant to the Southern District's standing order, In re: Petitions under 28 U.S.C. §§ 2255 and 2241 in Light of Johnson v. United States, 16-MC-217 (CM) (S.D.N.Y. June 8, 2016), which permitted counsel appointed for Johnson matters to file initial "placeholder" petitions to be supplemented on a future date.  See No. 02-cr-1082-04, ECF No. 276.  On July 27, 2020, this Court ordered the parties to file additional briefing on the precise legal issues raised by Aponte's petition, which they did.  See ECF No. 12.

[5] The Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019) precluded the use of conspiracy to commit Hobbs Act robbery as a valid predicate for Aponte's § 924(c) convictions.  See 2021 Memorandum and Order, at 5-6.

21; <u>Aponte v. United States</u>, No. 21-2144, Dkt. No. 39.   On June 21, 2022, the Supreme Court issued its decision in <u>Taylor</u> and held, contrary to <u>McCoy</u>, that attempted Hobbs Act robbery does not qualify as a crime of violence for purposes of 18 U.S.C. § 924(c)(3).   142 S. Ct. at 2020 ("Whatever one might say about <u>completed</u> Hobbs Act robbery, <u>attempted</u> Hobbs Act robbery does not satisfy the elements clause.") (emphasis in original).

Following <u>Taylor</u>, the Second Circuit, with the Government's consent, vacated this Court's decision and remanded for further proceedings.   ECF No. 22.   In its order, the Second Circuit directed the Court to resolve two issues: (1) "whether the case law underlying Appellant's claim may be applied retroactively to cases on collateral review"; and (2) "whether Appellant's § 924(c) conviction is still supported by any valid crime-of-violence predicate."   <u>Id.</u> at 2.

On November 2, 2022, Aponte filed a letter arguing that his convictions for two counts of violating 18 U.S.C. § 924(c) should be vacated and dismissed in light of <u>Taylor</u>.   ECF No. 26 ("Def. Br.").   The Government opposed on December 1, 2022, ECF No. 29 ("Gov't Opp."), and Aponte replied on December 12, 2022, ECF No. 31 ("Def. Reply").   On January 31, 2023, the Court filed a letter requesting submissions "from both parties as to whether the Government's position that the Court can consider Mr. Aponte's

plea agreement and allocution has support (or not) in the case law in this context." ECF No. 32. The Government filed its supplemental letter on February 21, 2023, ECF No. 35 ("Gov't Supp. Opp."), and Aponte filed a response on March 7, 2023, ECF No. 36 ("Def. Supp. Br.").

### DISCUSSION

As noted above, the Second Circuit has instructed us to resolve two questions: (1) "whether the case law underlying Appellant's claim may be applied retroactively to cases on collateral review"; and (2) "whether Appellant's § 924(c) conviction is still supported by any valid crime-of-violence predicate." ECF No. 22 at 2. With respect to the first question, we hold that the Government has waived any argument that Taylor cannot be applied retroactively to Aponte's case, but for the avoidance of doubt, we also conclude that Taylor can be applied retroactively to cases on collateral review brought under § 2255. We then reach the second question and hold that Aponte's § 924(c) convictions are supported by valid crime of violence predicates, namely, two completed Hobbs Act robberies.

### I.  Retroactive Applicability on Collateral Review

Under 28 U.S.C. § 2255(f)(3), a motion to vacate shall be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3) (emphasis added).

As the Second Circuit stated recently in Hall v. United States, "[t]he framework for determining whether a decision applies retroactively to cases on collateral review is set forth by the [Supreme Court's] plurality opinion in Teague v. Lane." 58 F.4th 55, 60 (2d Cir. 2023) (citing Teague v. Lane, 489 U.S. 288 (1989)). "'Under Teague, as a general matter, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced' unless they fall under an established exception." Hall, 58 F.4th 60 (first quoting Welch v. United States, 578 U.S. 120, 128 (2016); and then quoting Teague, 489 U.S. at 310). "As relevant here, one of those exceptions is for 'new substantive rules,' which 'generally apply retroactively.'" Hall, 58 F.4th at 60 (first quoting Welch, 578 U.S. at 128; and then quoting Schriro v. Summerlin, 542 U.S. 348, 351, (2004)) (emphasis omitted).

The Government's decision not to raise a Teague argument here -- and thereby forfeit the argument as in Hall -- is understandable. See Hall, 58 F.4th at 60; see also Schiro v. Farley, 510 U.S. 222, 229 (1994) (the Government "can waive the Teague bar by not raising it"). Taylor fits easily into the

precedents holding that Johnson[6] and Davis[7] apply retroactively on collateral review.

As in Johnson and Davis, Taylor announced a new rule by overturning existing precedent. See Teague, 489 U.S. at 301 ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.") (emphasis in original); accord Welch, 578 U.S. at 129; Hall, 58 F.4th at 60.

And, as in Johnson and Davis, Taylor announced a substantive rule. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes," which "includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."

---

[6] In Welch, the Supreme Court held that its previous decision in Johnson v. United States, 576 U.S. 591 (2015) -- which held that the definition of prior "violent felony" in the residual clause of the Armed Career Criminal Act was unconstitutionally vague under due process principles -- announced a substantive rule that applied retroactively on collateral review. 578 U.S. at 135.

[7] In Hall, the Second Circuit held that United States v. Davis, 139 S. Ct. 2319 (2019) -- the Supreme Court's decision which struck down the residual clause of § 924(c)(3)(B) -- applied retroactively on collateral review. 58 F.4th at 63.

We also take note of Bousley v. United States, 523 U.S. 614 (1998), in which the Supreme Court held that Bailey v. United States, 516 U.S. 137 (1995) -- its earlier decision modifying the provision of § 924(c) that imposes increased penalties on the use of a firearm in relation to certain crimes -- was substantive, because Bailey "h[eld] that a substantive criminal statute does not reach certain conduct." 523 U.S. at 620.

Schriro, 542 U.S. at 351–53 (internal citations omitted); accord Welch, 578 U.S. at 129; Hall, 58 F.4th at 61.

Here, Taylor necessarily narrowed the scope of § 924(c). Before Taylor, a conviction for attempted Hobbs Act robbery could serve as a valid crime of violence predicate under 18 U.S.C. § 924(c).  After Taylor, a conviction of "the same person engaging in the same conduct" cannot serve as a valid crime of violence predicate.  Hall, 58 F.4th at 61–62 (quoting United States v. Bowen, 936 F.3d 1091, 1101 (10th Cir. 2019)).

Last, although the Second Circuit has not directly addressed Taylor's retroactive applicability on collateral review, it recently cited with approval a Sixth Circuit case which applied Taylor retroactively to a request to vacate under § 2255.  United States v. Collymore, 61 F.4th 295, 297 (2d Cir. 2023) (citing Wallace v. United States, 43 F.4th 595, 601 (6th Cir. 2022)).[8]

Following this instructive precedent, we answer the first question posed by the Second Circuit in the affirmative: Taylor applies retroactively to petitioners, like Aponte, who seek collateral review of their convictions under § 2255.

---

[8] Two other courts in the Southern District have also suggested that Taylor applies retroactively to cases on collateral review.  See United States v. Nguyen, No. 07-cr-1121 (PAE), 2023 WL 2754303, at *4 (S.D.N.Y. Apr. 3, 2023); Pedro v. United States, No. 03-cr-0346-01 (SHS), 2022 WL 17418529, at *1 (S.D.N.Y. Nov. 30, 2022).

-9-

## II.  **Valid Predicate Crime of Violence**

Having determined that <u>Taylor</u> applies retroactively to Aponte's petition, we now turn to the Circuit's second question: "whether [Aponte's] § 924(c) conviction is still supported by any valid crime-of-violence predicate."  ECF No. 22 at 2.

As an initial matter, "[t]he Government acknowledges that each Section 924(c) count was predicated on a Hobbs Act robbery conspiracy and an attempted Hobbs Act robbery, which are no longer valid crimes of violence."  Gov't Opp. at 4.  However, the Government further maintains that "each Section 924(c) count was also predicated on a completed Hobbs Act robbery, which is a valid crime of violence."  <u>Id.</u>  Specifically, it argues that, while each of the two § 924(c) counts of the S12 Information set out three alternative (though not necessarily mutually exclusive) predicate crimes of violence, the crime that Aponte actually pled guilty to -- completed Hobbs Act Robbery -- was, and is, a sufficient predicate to sustain a § 924(c) conviction.  See <u>id.</u> at 4-5; <u>United States v. Vasquez</u>, 672 F. App'x 56, 61 (2d Cir. 2016) (one valid crime of violence predicate is sufficient to sustain a § 924(c) conviction).

By contrast, Aponte contends that the only § 924(c) predicate crimes to which Aponte pled guilty were conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery, which are no longer

crimes of violence, and even assuming Aponte pled guilty to completed Hobbs Act robberies, a completed Hobbs Act robbery is no longer a crime of violence.  See Def. Reply at 1-2, 6-12.

Our analysis is therefore tripartite: first, does a completed Hobbs Act robbery constitute a valid crime of violence under § 924(c)?  Second, if so, can the Court consider Aponte's plea agreement and allocution -- in addition to the S12 Information -- in evaluating whether Aponte pled guilty to committing completed Hobbs Act robberies?  And third, did Aponte plead guilty to committing completed Hobbs Act robberies?

For the reasons set forth below, the Court answers all three questions in the affirmative and denies Aponte's petition.

### a. Hobbs Act Robbery Is a Crime of Violence

As a threshold issue, Aponte argues that the Court must grant his § 2255 motion even assuming, arguendo, that he pled to the commission of completed Hobbs Act robberies, because a completed Hobbs Act robbery does not qualify as a crime of violence for purposes of § 924(c).  Def. Reply at 6-12; Def. Supp. Br. at 4 n.1.  This argument is not viable.  Four months ago, the Second Circuit clearly stated that "we see nothing in Taylor's language or reasoning that undermines this Court's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)."  United States v.

McCoy, 58 F.4th 72, 74 (2d Cir. 2023); see also United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018) (Hobbs Act robbery is a crime of violence under § 924(c)); Mendez v. United States, No. 21-1536, 2022 WL 17684586, at *2 (2d Cir. Dec. 15, 2022) ("Hobbs Act robbery itself remains a valid predicate crime of violence for convictions under § 924(c)."); Broadnax v. United States, No. 15-cr-878 (VM), 2022 WL 4133247, at *5 (S.D.N.Y. Sept. 12, 2022) ("While the law concerning 'crimes of violence' has changed in the years since Hill, this holding has remained undisturbed."); accord United States v. Amador-Rios, No. 18-cr-398 (RPK), 2023 WL 2383273, at *4 (E.D.N.Y. Mar. 6, 2023).  Because Second Circuit case law is clear on this issue, Aponte's contention to the contrary is foreclosed.

### b. The Court Can Consider Aponte's Plea Agreement and Allocution

Next, we turn to whether the Court can consider limited documents beyond the S12 Information in determining whether Aponte pled guilty to committing completed Hobbs Act robberies.  We read the S12 Information, on its face, as charging Aponte with three alternative predicate crimes of violence, all of which were derived from a divisible statute.  See 18 U.S.C. § 1951(a).  Although the S12 Information outlines the predicate offenses that Aponte was charged with, it does not resolve the issue of the offense to which he actually pled.  Thus, it is appropriate for the Court to adopt

the so-called "modified categorical approach" in this case and consider a limited set of documents beyond the S12 Information -- namely, his plea agreement and the colloquy with the Court at his plea hearing.

The categorical approach is generally used to determine whether the underlying offense is a crime of violence, Hill, 890 F.3d at 55,[9] but courts may "employ what is known as the 'modified categorical approach,' as opposed to the 'categorical approach,' where a statute is 'divisible' because it "sets out one or more elements of the offense in the alternative, and "thereby define[s] multiple crimes." United States v. Morris, 61 F.4th 311, 317 (2d Cir. 2023) (first quoting Descamps, 570 U.S. at 257; and then quoting United States v. Pastore, 36 F.4th 423, 428 (2d Cir. 2022)) (internal quotation marks omitted). Under the modified categorical approach, the Court may "may review 'a limited class of documents' from the record of conviction to 'determine what crime, with what elements, a defendant was convicted of.'"

---

[9] "Under the categorical approach, courts identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" Id. (quoting United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006)) (per curiam). "In doing so, courts 'look only to the statutory definitions -- i.e., the elements -- of the . . . offense, and not to the particular underlying facts.'" Id. (first quoting Descamps v. United States, 570 U.S. 254, 257 (2013); and then quoting Taylor v. United States, 495 U.S. 575, 600 (1990)) (quotation marks and alterations omitted). "The reviewing court 'cannot go behind the offense as it was charged to reach its own determination as to whether the underlying facts' qualify the offense as . . . a crime of violence." Id. (first quoting Ming Lam Sui v. INS, 250 F.3d 105, 117-18 (2d Cir. 2001); and then quoting Lewis v. INS, 194 F.3d 539, 543 (4th Cir. 1999)) (alteration omitted).

Pastore, 36 F.4th at 428 (first quoting Gray v. United States, 980 F.3d 264, 266 (2d Cir. 2020); and then quoting Mathis v. United States, 579 U.S. 500, 505–06 (2016)).  These documents include a defendant's plea agreement and colloquy.  Mathis, 579 U.S. at 505–06; see also Shepard v. United States, 544 U.S. 13, 16 (2005) (under the modified categorical approach, the Court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented").

Aponte does not dispute that courts may employ the modified categorical approach if the statute underlying the § 924(c) crime of violence predicate offense at issue is divisible.  See Def. Supp. Br. at 1.  Further, Aponte does not dispute that the Hobbs Act statute, codified at 18 U.S.C. § 1951(a), is divisible.  Id. However, Aponte argues that the Court may not look beyond the S12 Information here, because "[i]mplicit in the Court's limited authority to look beyond the charging document, and employ the modified categorical approach, is a threshold showing that the charging document does not plainly identify the charges and/or elements for which Mr. Aponte was convicted."  Id.  Aponte further contends that "the S12 Information is clear:  Mr. Aponte's two

§ 924(c) convictions were predicated on conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery."  Id.

We reject Aponte's position that the S12 Information alone resolves this issue.  As the Court noted in a previous letter to the parties, the S12 Information includes two "to wit" clauses in each of Counts One and Two, the first of which describes a conspiracy to commit Hobbs Act Robbery and attempted Hobbs Act robbery.  However, the second clause in both counts describes an actual robbery:

- Count One: [T]o wit, APONTE used, carried and possessed and aided and abetted the use, carrying and possession of a firearm during a robbery in furtherance of which APONTE, together with others known and unknown, forcibly entered an apartment in the vicinity of 840 Grand Concourse, Building No. 10, Bronx, New York, brandished a firearm, searched for narcotics proceeds, restrained the occupants, assaulted, burned and beat at least one of the occupants and robbed the occupants of personal items.

- Count Two: [T]o wit, APONTE, together with others known and unknown, robbed the occupants of an apartment in the vicinity of 155th Street and Saint Nicholas Place, New York, New York, of cocaine, restraining the victims and assaulting one with a gun.

S12 Information at 1-2 (emphasis added).  Thus, the S12 Information can alternatively be read to charge three theories of liability, which it is permitted to do when drafting the charging instrument.  See United States v. Ulbricht, No. 14-cr-68 (KBF), 2014 WL 5410049,

at *4 (S.D.N.Y. Oct. 24, 2014).[10]  Most significantly, the S12 Information's plain text does not establish whether Aponte pled to conspiracy to commit Hobbs Act robberies, attempted Hobbs Act robberies, or completed Hobbs Act robberies with respect to either Counts One and Two.[11]  Thus, we adopt the modified categorical approach and consider the terms of Aponte's plea agreement as well as Aponte's plea hearing colloquy with the Court.  See Descamps, 570 U.S. at 257; Mathis, 579 U.S. at 505-06.[12]

---

[10] Generally, a charging instrument is "not defective simply because it charge[d] [a defendant] with alternative offenses."  Id. (internal quotation marks omitted).  The Government may even "present those alternative theories to a jury" should the case reach trial.  Id.

[11] The lack of clarity caused by the Government's "hardly fastidious" drafting of the S12 Information is well-illustrated by this Court's 2021 Memorandum and Order.  Cf. United States v. Dussard, 967 F.3d 149, 158 (2d Cir. 2020) (language drafted by the Government in a § 924(c) plea agreement described as "hardly fastidious").  Aponte argues that the Government's current position -- that Aponte pled guilty to completed Hobbs Act robberies -- is foreclosed, because this Court at one point described Counts One and Two as predicated on conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery in 2021.  See Def. Supp. Br. at 2.  We acknowledge having described Aponte's two § 924(c) charges as predicated on conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery in that opinion, see 2021 Memorandum and Order, at 1-2.  However, elsewhere in the same decision we stated that Count One and Count Two were predicated on completed robberies.  Id. at 1 ("Count One charged Aponte with using and brandishing a firearm during a robbery . . . . Count Two charged Aponte with robbing the occupants of a Manhattan apartment . . . .").

In any event, the issues of whether the Court could rely on Aponte's plea agreement and plea colloquy to determine the predicate crime(s) to which Aponte pled guilty, and whether Aponte pled guilty to completed Hobbs Act robberies, were not before the Court in 2021.  There, we were solely addressing: (1) the impact of Johnson and Davis on Aponte's § 924(c) convictions and (2) whether Aponte was eligible for a sentence reduction pursuant to the First Step Act.  Id. at 5.  Consequently, we do not consider the 2021 Memorandum and Order to be dispositive of the issues now before us.

[12] The Court does not, however, consider the PSR given Second Circuit case law that is skeptical of district courts relying on the PSR under the modified categorical approach.  See United States v. Pena, 762 F. App'x 34, 38 (2d Cir.

-16-

### c. Aponte Pled to Completed Hobbs Act Robberies

Finally, we find that the S12 Information, Aponte's plea transcript, and his plea colloquy establish that each § 924(c) count was predicated on a completed Hobbs Act robbery.

We begin with the text of the S12 Information.  As discussed above, both Count One and Count Two state that Aponte "robbed the occupants" of two separate apartments.[13]  Aponte contends, however, that all language following the second "to wit" clause in the S12 Information was merely intended to illustrate the unlawful act on which the § 924(c) conspiracy predicate is based.  Def. Supp. Br. at 3.  Aponte's plea agreement and plea colloquy belie this argument even assuming that Aponte's argument was grammatically correct, which we do not.

First, Aponte's plea agreement describes each § 924(c) count as predicated on "a robbery."  The agreement states:

> Count One of the [S12] Information charges the defendant with using and aiding and abetting the use and brandishing of a firearm during and relation to a crime of violence, <u>i.e., a robbery</u> at 840 Grand Concourse, Building No. 10, Bronx New York, on or about January 29, 2001 . . . .

---

2019); <u>United States v. Reyes</u>, 691 F.3d 453, 459 (2d Cir. 2012); <u>United States v. Rosa</u>, 507 F.3d 142, 156 (2d Cir. 2007).‼

[13] Count One specifies, and graphically adds, that Aponte "restrained the occupants, assaulted, burned and beat at least one of the occupants" during the first robbery, while Count Two notes that Aponte "restrain[ed] the victims and assault[ed] one with a gun" in the other.  S12 Information, at 1–2.

ECF No. 30-2 (the "Plea Agreement") at 1 (emphasis added).
Likewise:

> Count Two of the [S12] Information charges the defendant
> with using and aiding and abetting the use and
> brandishing of a firearm during and relation to a crime
> of violence, i.e., a robbery at 155th Street and Saint
> Nicholas Place, New York, New York, in or about the
> Spring of 2001 . . . .

Id. (emphasis added).

Moreover, during Aponte's plea colloquy with the Court, there
was no issue that he was pleading guilty to completed robberies.
Indeed, with respect to Counts One and Two, none of the parties
referenced conspiracy or attempt.

The Court initially described the Section 924(c) counts as
predicated on actual robberies:

> THE COURT: Count 1 charges you with using and aiding and
> abetting the use and brandishing of a firearm during a
> crime of violence, namely, a robbery at 840 Grand
> Concourse in the Bronx on or about January 29 of the
> year 2001.
>
> . . .
>
> THE COURT: Count 2 of the information charges you with
> the crime of using and aiding and abetting the use of a
> firearm during a crime of violence, namely, a robbery at
> 155th Street and St. Nicholas Place in the spring of
> 2001.

No. 02-cr-1082-04, ECF No. 97, Transcript of Plea Hearing ("Plea
Hearing Tr.") at 5-6. The Government's description was consistent:

> With respect to Counts 1 and 2, . . . the defendant
> committed a crime of violence for which he might be

-18-

prosecuted in a court of the United States.  Here, that crime of violence would be robbery, your Honor.

Id. at 8.

Aponte not only failed to contradict those assertions, but he also admitted that a completed robbery occurred in connection with each of the two § 924(c) counts.  With respect to Count One, Aponte had the following exchange with the Court:

> THE COURT: We're back to Count 1.  In your own words, Mr. Castillo,[14] could you tell me what you did.
>
> THE DEFENDANT:  Count 1, that's the Grand Concourse robbery?
>
> THE COURT: That's one.
>
> THE DEFENDANT: What we were doing, we were planning to do the robbery, and at that point a guy came who was bringing some food from a Chinese place, so I waited downstairs. The other four guys went up and tied the people up.  That's Count 1.
>
> THE COURT: Okay.
>
> THE DEFENDANT: And they had weapons.
>
> THE COURT: You knew they had weapons, is that correct?
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> THE COURT: Mr. Castillo, did you understand that the other guys who went up to the apartment who had the weapons would use and show those weapons if it was necessary for them to complete the robbery?
>
> THE DEFENDANT: Yes.

---

[14] Mr. Aponte's real name is Wilson Florentino Castillo.  Id. at 2-3.

MS. KORENBAUM: In fact, your Honor, the government would prove that the weapon was brandished on this robbery.

THE COURT: Did this robbery occur on or about January 29, 2001?

THE DEFENDANT: Yes.

THE COURT: Was the purpose of the robbery to obtain drugs or money related to drug sales?

THE DEFENDANT: Yes.

Id. at 18-19.  Aponte also admitted to committing the robbery set

out in Count Two:

THE COURT: Let's go on to Count 2.  That is the 155th Street and St. Nicholas Place robbery.  Could you tell me with respect to that crime what you did.

THE DEFENDANT: We were waiting for somebody to come out of the apartment so we could go in and look for drugs. So what happened, we robbed the people that were inside.

THE COURT: Did you have a gun as part of that robbery?

THE DEFENDANT: Yes. I was carrying a gun.

THE COURT: What happened?  What did you do with the gun?

THE DEFENDANT: I pointed the gun at the people so we could get into the apartment and search it.

THE COURT: Did you hit anybody with the gun?

THE DEFENDANT: Yes.  The guy came at me to take the gun away, and I had to hit him with it.

THE COURT: Did this robbery occur in or about the spring of 2001?

THE DEFENDANT: Yes.

THE COURT: Again, were you trying to rob someone of drugs or the money that had been obtained from drug dealings?

THE DEFENDANT: Yes.

-20-

Id. at 20–21.

By contrast, both the Government and Aponte were careful in correcting the Court that the robbery underlying Count Three -- the Count which charged Aponte with using a cellular telephone in furtherance of a conspiracy to distribute and possess drugs obtained in robberies of drug dealers -- did not actually occur:

> THE COURT: Count 3 concerns a robbery at Central Avenue in the Bronx.  Could you tell me what you did in connection with that robbery.
>
> MS. KORENBAUM: Your Honor, that was a robbery that actually didn't happen.  It was a plan to rob that location during which the telephone was used, a cellular phone.
>
> THE COURT: Tell me what you did with respect to this planned robbery.
>
> THE DEFENDANT: At Sedgwick?
>
> THE COURT: Yes.
>
> THE DEFENDANT: We didn't rob anybody.  I was talking on the cell phone about a person we were watching.
>
> . . . .
>
> THE COURT: Is there anything else?
>
> MS. KORENBAUM: Yes, your Honor.  If you could just confirm with the defendant that the use of the phone was in connection with a plan to rob a person or persons of drugs and/or drug proceeds which would then be divided between the defendant and his co-conspirators.
>
> THE COURT: Could you answer Ms. Korenbaum's question, please.
>
> THE DEFENDANT: That is why we were planning do the robbery, and I was talking on the phone.

Id. at 21-22.   Aponte, the Court, and the Government thus understood that Counts One and Two concerned completed robberies but Count Three did not.

Accordingly, after a careful examination of the S12 Information, Aponte's plea agreement, and his plea colloquy, the Court holds that Aponte pled guilty to completed Hobbs Act robberies, which are crimes of violence.[15]

## CONCLUSION

Accordingly, for the reasons stated above, Aponte's Petition is denied.


**SO ORDERED.**


Dated:    New York, New York
          May 23, 2023

                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE

---

[15] The Government argues in the alternative that Aponte is procedurally barred from claiming that his § 924(c) convictions should be vacated because he failed to raise the arguments on which the Petition is based on direct appeal.  See Gov't Opp. at 5-10.  We need not resolve this issue given our conclusions on the merits and the Teague issue.